# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

RAMIE KEY,

    Plaintiff,

v.

CHRISTOPHER KIGHT,

    Defendant.

CIVIL ACTION NO.: 6:14-cv-39

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's damages award after entry of default judgment against Defendant Kight. The Court conducted an evidentiary hearing on this matter on February 21, 2017. For the reasons and in the manner set forth below, I **RECOMMEND** the Court **GRANT** Plaintiff's Motion for Default and **AWARD** damages, fees, and costs in the amount of **$289,367.59** against Defendant Kight and in favor of Plaintiff.

## **BACKGROUND**

Plaintiff, who is currently housed at Augusta State Medical Prison in Grovetown, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement while he was housed at Rogers State Prison in Reidsville, Georgia. (Doc. 1.) Plaintiff alleged Charles Fugitt, previously named as a Defendant in this case, and Defendant Kight, used excessive force against Plaintiff on May 19, 2012, while in their former capacities as correctional officers employed by the Georgia Department of Corrections. (Id. at p. 4.) In his Amended Complaint, Plaintiff contended Fugitt and Defendant Kight questioned him about having consumed contraband, and Defendant Fugitt became "increasingly hostile and

belligerent" during this questioning. (Doc. 7, p. 3.) Plaintiff was handcuffed behind his back at the conclusion of the questioning, and Officer Michael Hartmeyer initially escorted Plaintiff down a hallway. Plaintiff was compliant with Hartmeyer and did not resist in any way. Fugitt and Defendant Kight walked with Plaintiff and Hartmeyer into the hallway while Fugitt continued his verbal assault of Plaintiff. Plaintiff spoke back to Fugitt. (Id. at p. 4.) Plaintiff contended, once he was through an opened doorway, Fugitt and Defendant Kight "forcefully moved Hartmeyer aside and took control" of Plaintiff. (Id.) Plaintiff remained handcuffed and was not physically resisting Fugitt or Defendant Kight. Fugitt and Defendant Kight took Plaintiff by the arms, exchanged a glance, swept Plaintiff's feet from under him, and "forcefully slammed [Plaintiff's] face into the concrete floor." (Id. at p. 5.) Fugitt and Defendant Kight both pressed a hand in Plaintiff's back before they slammed his face into the floor "so as to maximize the amount of force with which" Plaintiff's face would hit the floor. (Id.) Plaintiff remained unconscious and immobile on the floor, and had to be transferred to a local hospital and then Augusta State Medical Prison to receive treatment for his injuries. (Id. at p. 6.)

As a result of this use of force, Plaintiff suffered a broken orbital bone in his right eye, a broken nasal bone, injuries to his back and neck, and chipping of several teeth. (Id.) The Georgia Department of Corrections investigated Fugitt's and Defendant Kight's use of force against Plaintiff and found the use of force to be unnecessary and excessive. (Id. at p. 7.) Fugitt and Defendant Kight were terminated from their employment with the Georgia Department of Corrections and were indicted on charges of aggravated battery and violation of oath by a public officer. (Id. at pp. 7–8.) Fugitt and Defendant Kight entered pleas to each of these charges pursuant to North Carolina v. Alford, 400 U.S 25 (1970). (Id. at p. 8; Doc. 7-3; Doc. 7-4.)

2

Plaintiff filed his Complaint on May 9, 2014, and he filed his Amended Complaint on May 22, 2014. Fugitt filed his Answer on June 23, 2014. (Doc. 9.) Defendant Kight filed his Answer on September 19, 2014. (Doc. 11.) On August 10, 2015, the Honorable J. Randal Hall approved Plaintiff's and Fugitt's consent judgment and entered judgment against Fugitt, "in his individual capacity, for compensatory damages, costs, and attorneys' fees on Plaintiff's claims in the amount of **Three Hundred Thousand Dollars ($300,000)**." (Doc. 19, p. 1 (bold in original).) By this same Order, Judge Hall directed Plaintiff and Defendant Kight to submit a status report and a proposed scheduling order within ten (10) days of his Order. (Id. at p. 2.) Plaintiff attempted to locate and correspond with Defendant Kight regarding this report but was unable to do so, despite good faith efforts. Thus, the Court allowed Plaintiff an additional fourteen (14) days to submit a status report and, if he was still unable to contact Defendant Kight, to submit his own status report within twenty-one (21) days. (Doc. 22.)

In an effort to contact Defendant Kight, Plaintiff had a process server locate Defendant Kight. Defendant Kight was served with a copy of the Court's most recent Order and was given Plaintiff's attorney's telephone number. (Doc. 23-1, p. 2.) Defendant Kight did not contact Plaintiff's attorney, and Plaintiff filed a unilateral status report on September 11, 2015, asking the Court to strike Defendant Kight's Answer and to enter default. (Doc. 23.) The Court issued an Order on September 17, 2015, directing Defendant Kight to show cause, in writing, as to why the Court should not strike his Answer and enter default. (Doc. 24.) When the deadline for Defendant Kight to respond to the Court's Order expired, Plaintiff moved for entry of default. (Doc. 25.) The Court granted Plaintiff's Motion, directed the Clerk of Court to strike Defendant Kight's Answer and enter default against him, and directed Plaintiff to file a motion for default judgment within thirty (30) days of the entry of default. (Doc. 26, p. 3.) The Clerk of Court

entered default on October 22, 2015, (doc. 27), and Plaintiff filed his Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) on November 20, 2015. (Doc. 30.) Plaintiff attached to his Motion: 1) his own declarations; 2) the declaration of Dr. Elizabeth Miller; 3) video surveillance of the use of force incident; 4) an audio recording of a sworn interview of Defendant Kight; and 5) Plaintiff's medical records. Defendant Kight failed to respond to Plaintiff's Motion.

On September 21, 2016, Judge Hall entered an Order addressing Plaintiff's Motion for Default. Judge Hall noted that, for a party to be entitled to a default judgment in his favor, "there must be a sufficient basis in the pleadings." (Doc. 33, p. 5 (citation and alteration omitted).) Judge Hall also noted the Court had to be satisfied that Plaintiff's well-pled facts provided for the Court's jurisdiction, the Defendant's liability, and Plaintiff's damages. (Id.) Judge Hall determined Plaintiff's well-pled facts established this Court's jurisdiction and Defendant Kight's liability, (id. at pp. 5–9), but Plaintiff's claims for damages were not in a sum certain, (id. at p. 10). Judge Hall recognized Plaintiff's compensatory damages' estimate to be $72,360.00, but the Court could not conclude this estimate had a "legitimate basis for a damage award." (Id. at p. 11.) Thus, Judge Hall directed the undersigned to conduct necessary proceedings to recommend an amount for Plaintiff's damages, attorney's fees, and costs, and Judge Hall deferred final ruling on Plaintiff's Motion until that time. (Id. at p. 12.) Judge Hall advised Plaintiff he should be prepared to submit evidence as to: 1) his physical pain and suffering and mental and emotional distress experienced; 2) the impairment to his vision caused by Defendant Kight's actions and the impact on his earning capacity and future medical care; 3) the maliciousness of Defendant Kight's conduct; and 4) Plaintiff's legal fees and costs. (Id.) Defendant Kight was served with a copy of this Order. (Dkt. Entry dated Sept. 21, 2016.)

4

The Court held an evidentiary hearing on February 21, 2017, and Defendant Kight was notified of this hearing. (Dkt. Entry dated Jan. 25, 2017.) Plaintiff and his attorney, Jacqueline Piland, appeared at this hearing and presented evidence, testimony, and argument in support of Plaintiff's damages claims, attorney's fees, and costs. The Court provided Ms. Piland with an additional fourteen (14) days to supplement the record. Defendant Kight did not appear for this hearing or otherwise inform the Court of any opposition thereto.

## DISCUSSION

In deciding a motion for default judgment[1], "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). "While '[a]n evidentiary hearing is not a *per se* requirement,' the Eleventh Circuit [Court of Appeals] has made clear that 'such hearings are required in all but 'limited circumstances,' as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages.'" Jordaan, 746 F. Supp. 2d at 1352 (quoting SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005), in turn quoting KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 21 (1st Cir. 2003)).

---

[1] As noted above, a court must determine whether it has jurisdiction, a defendant's liability, and an amount of damages in ruling on a motion for default judgment based on a plaintiff's well-pled facts. Judge Hall has already determined the Court has jurisdiction and that Defendant Kight's liability has been established. Thus, this Court's analysis now focuses only on a discussion of damages.

"Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25 2011) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)). A court must ensure an award is not a "completely unreasonable or speculative amount [ ] with no factual basis." Anheuser Busch, 317 F.3d at 1266. "[I]t remains incumbent on plaintiff to prove the amount of damages to which [he] is entitled." Vision Bank, 2011 WL 250430, at *2 (first alteration in original). "Indeed, a plaintiff must 'show the Court what [his] damages are, how they are calculated, and where they come from.'" Id. (quoting PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)).

**I.  Plaintiff's Damages**

In his Motion, Plaintiff estimated that his potential income loss after his release from prison relating to the loss of vision to be approximately $72,360.00. (Doc. 30, p. 10.) Plaintiff also stated he is entitled to punitive damages in the amount of $25,000.00. (Id. at p. 12.) However, Plaintiff failed to include in his Motion any further amount or basis for damages, especially compensatory damages.

Ms. Piland re-introduced the evidence used in support of Plaintiff's Motion for Default Judgment during the hearing. This evidence shows Plaintiff received a hematoma on his right eyelid, hemorrhaging in his right sinus, a head contusion, and a fracture to his right orbital bone as a result of Fugitt's and Defendant Kight's assault. (Doc. 30-6, p. 50.) Plaintiff was taken to a local hospital and had stitches above his right eye for a "deep laceration." (Id. at pp. 53, 119;

Doc. 30-2, pp. 7–10.) In addition, Plaintiff presented with "total opacification[2] nearly of the right maxillary sinus which is secondary to trauma." (Doc. 30-6, p. 126.)

Plaintiff underwent surgery on his right eye, including the placement of a metal plate, on May 30, 2012, at Augusta State Medical Prison in an effort to repair his right orbital floor fracture with diplopia (double vision) on upward gaze. (Id. at pp. 25, 36.) Almost a year later, Plaintiff presented to the medical unit at Smith State Prison with decreased range of motion in his neck and chronic pain in his neck and back, and he was diagnosed with cervical neck spasms. (Id. at p. 62.) Plaintiff reported to having no neck or back pain prior to the assault. (Id. at p. 68.) Nearly two years after the assault, Plaintiff complained of having blurred vision. He was diagnosed with "decreased visual acuity[ ]", and had 20/70 vision without glasses.[3] (Id. at pp. 61–62, 93.) Plaintiff later received a prescription for safety bifocal glasses in July 2015. (Id. at p. 143.) Dr. Elizabeth Miller, an ophthalmologist with the Georgia Eye Institute in Savannah, Georgia, submitted a declaration and opined, after reviewing Plaintiff's medical records and in light of the trauma Plaintiff suffered, that "it is unlikely [Plaintiff] will regain the kind of vision and eye movement he had before the injury." (Doc. 30-3, p. 3.)

Plaintiff declared in support of his Motion for Default Judgment that Fugitt and Defendant Kight escorted him down the hall while he was handcuffed and had control over him. (Doc. 30-2, p. 2.) Plaintiff stated he remembered having an exchange of words with one or both of these men and then having his head slammed into the floor. (Id. at p. 3.) Plaintiff lost consciousness and was getting stitches when he woke up in the hospital and could not see out of

---

[2] Total opacification of the maxillary sinus is a symptom of acute sinusitis, which can be caused by structural variations in the nasal cavity. Reference, https://www.reference.com/health/total-opacification-maxillary-sinus-7d346af3df0d69aa (last visited Mar. 7, 2017).

[3] In April 2014, Plaintiff's visual acuity, uncorrected, in his right eye was 20/100 and 20/70 in his left eye. (Doc. 30-6, p. 93.)

his right eye because it was swollen shut.  (Id.)  Once the swelling decreased, Plaintiff could see out of his right eye, yet he had double and blurred vision.  Plaintiff averred that he could not control the movement of his right eye for a time after the assault, and it looked like his eyeball was detached from his body when he looked in a mirror.  Plaintiff stated he never experienced problems like this before the assault.  (Id.)  Plaintiff also stated he experienced physical pain as he never had before after this assault, including having a broken nose and eye socket, throbbing in his head that made him feel his head would explode, radiating pain, and extreme pain when making even simple movements.  (Id. at pp. 3–4.)  Though Plaintiff could not express his emotions, he stated he was more guarded and less trusting of authority figures since his attack.  Additionally, Plaintiff declared he worked in the construction field, including as a welder, prior to his incarceration, and all of the jobs he held require good hand-eye coordination.  Plaintiff also declared he did not believe he could perform the same kind of work that he once had and would at least be at a disadvantage in trying to obtain these sorts of jobs.  (Id. at p. 5.)  Despite his injuries, Plaintiff stated he has been able to take advantage of the training and educational programs offered in the prison system.  In fact, Plaintiff obtained his general educational development diploma ("GED") and completed 960 hours of building maintenance repair while in prison.  (Id. & at pp. 13, 15.)  Plaintiff plans on going to school and learning how to be a crane operator after his release.[4]  (Doc. 30-4, p. 3.)  However, Plaintiff recognizes that, to become a crane operator, he must pass a physical examination, which often has a vision component, and he worries his injuries and vision will make it harder to obtain a job as a crane operator or any other job in the construction field.  (Id.)

---

[4] Plaintiff is currently in a re-entry program and has the option of applying to be released to a transitional center or halfway house in July 2017.  His tentative parole month is January 2019.  (Doc. 30-4, pp. 2–3.)

In addition, Plaintiff testified during the evidentiary hearing before the Court that he had 20/20 vision prior to the excessive use of force incident. Plaintiff had to undergo surgery in an attempt to restore his vision, including the implantation of a metal plate in his right orbital bone. He was also housed at Augusta State Medical Prison for nearly five months' time after this incident to receive care and treatment for his injuries. Now, however, Plaintiff's vision continues to deteriorate, and he has no peripheral vision on his right side and still suffers from double vision. In fact, Plaintiff testified that he has been prescribed a new pair of glasses with thicker lenses every year since he was assaulted. Moreover, Plaintiff reported that he cannot breathe through one side of his nose, and, although he can smell, he is more susceptible to colds and sinus issues. Additionally, Plaintiff lost some of his teeth as a result of the incident and had dental work performed. Plaintiff further testified that he continues experiencing pain in his neck and back. Specifically, Plaintiff stated his neck and back pain reach a level of an eight on a scale of one to ten if he has been working and a four if he has not been working. In addition, Plaintiff testified the pain associated with having surgery on his orbital area was a ten, but is now at a three, yet it took about a year and a half for this area to stop hurting so badly. Plaintiff also stated his scar is visible from his surgery, and he stated his eye looks "off" when he looks into the mirror or that he looks wall-eyed.

Plaintiff also testified that he was diagnosed with post-traumatic stress disorder ("PTSD") as a result of the assault, and he takes two medications to control the nervousness and anxiety he has experienced as a result of the assault. Plaintiff visits a mental health counselor once a month. In fact, Plaintiff asserted he is housed at Augusta State Medical Prison for treatment of his mental health concerns. Plaintiff stated he felt a little overwhelmed after the assault and had feelings of hopelessness for about two years after the assault. Additionally, Plaintiff stated he

had nightmares frequently after the assault, and he still has nightmares on occasion. Further, Plaintiff testified to feeling depressed at times. Plaintiff stated he did not suffer from any mental health conditions prior to the assault. Plaintiff expressed his feeling that Defendant Kight intended to hurt and embarrass Plaintiff and acted purposefully to cause him harm.

Finally, Plaintiff testified that he would like to resume his work as a welder or in the construction business once he is released from prison, but he cannot see well enough to weld, even while he is wearing his glasses. He explained the he has experienced this limitation while being placed on work detail following the assault. Plaintiff expressed concern that his neck and back issues may also prevent him from getting a job he wants upon his release, though to a lesser extent than his vision problems will. Plaintiff asserted he made $21.50 an hour as a welder prior to going to prison (about ten years ago) and that he was making $14.00 per hour as a framer. Plaintiff stated that, without the limitations caused by the assault, he may be able to work as a crane operator, and crane operators can make up to $35.00 per hour.

### A. Damages Attributable to Plaintiff's Physical Pain and Suffering and Mental and Emotional Distress

Plaintiff provided compelling testimony regarding his physical pain and suffering, as well as his mental and emotional distress, resulting from Defendant Kight's assault and use of excessive force under the Eighth Amendment. He described with sufficient detail the difficulties he has suffered without any apparent embellishment. In addition, Plaintiff submitted his medical records from the date of the assault through the year 2015. (Doc. 30-6.) To be clear, the evidence before the Court reveals Plaintiff suffered from excruciating physical pain in the weeks and months immediately following his assault. Plaintiff continues to experience physical pain, though admittedly not as severe as it once was. In addition, Plaintiff presently suffers from mental health issues that he did not have prior to the assault.

"Compensatory damages under § 1983 may be awarded only for actual injuries caused by the defendants' illegal conduct and cannot be based on the abstract value of the constitutional rights that were violated." McKissick v. Comm'r, Ga. Dep't of Corr., 587 F. App'x 567, 573–74 (11th Cir. 2014) (citing Slicker v. Jackson, 215 F.3d 1225, 1230–31 (11th Cir. 2000); see also Whiting v. Traylor, 85 F.3d 581, 586 & n.10 (11th Cir. 1996) (explaining recovery of Section 1983 damages is limited to those injuries proved to be caused by the defendants)). Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a federal civil action for damages for mental or emotional injury suffered while in custody absent a showing of physical injury. 42 U.S.C. § 1997e(e); Harris v. Garner, 190 F.3d 1279, 1287–88, 1290 (11th Cir. 1999), *vacated*, 197 F.3d 1059 (11th Cir. 1999) (en banc), *reinstated in relevant part*, 216 F.3d 970, 972, 985 (11th Cir. 2000) (en banc). Plaintiff has certainly suffered physical injury and is entitled to recover compensatory damages for both physical pain and suffering and mental and emotional distress resulting from Defendant Kight's excessive use of force. Based on the evidence and well-pleaded facts before the Court, I **RECOMMEND** the Court award Plaintiff **$100,000.00** in compensatory damages for physical pain and suffering and mental and emotional distress.[5]

### B. Damages Attributable to the Impairment of Plaintiff's Vision, Including his Earning Capacity and Future Medical Care

As noted above, Plaintiff had "perfect", or 20/20, vision prior to this assault. However, Plaintiff's vision has since deteriorated and continues to do so on a yearly basis. Moreover, Plaintiff testified that, although he would like to return to work as a welder upon his release from

---

[5] The Court makes the recommendation despite the fact that his counsel did not submit a specific request for damages deriving from Plaintiff's pain and suffering and mental and emotional distress. Nevertheless, the evidence before the Court overwhelmingly establishes that Plaintiff is entitled to compensatory damages as a measure of recovery for his extensive physical and emotional injuries, despite his attorneys' failing to specifically monetize this relief.

prison (perhaps as early as July 2017), his vision is at such a state he will likely be unable to do so. He testified that it is more likely that his capacity for work will be limited to that of a construction laborer. Plaintiff will need an eye examination and new prescription eyeglasses each year. In addition, Plaintiff is on medication for his mental health issues resulting from the assault and sees a mental health counselor once a month. There is nothing before the Court indicating Plaintiff's needs for mental health care will cease in the near future or otherwise upon his release from prison.

According to the United States Department of Labor's Bureau of Labor Statistics, the current median hourly rate for a welder is $18.34 per hour, or $38,150.00 per annum. 51-4121 Welders, Cutters, Solderers, and Brazers, U.S. Department of Labor, Bureau of Labor Statistics, https://www.bls.gov/oes/current/oes514121.htm (last modified Mar. 30, 2016).[6] The current median hourly rate for a construction laborer is $ 15.34 or $31,910.00 per annum. 47-2061 Construction Laborers, U.S. Department of Labor, Bureau of Labor Statistics, https://www.bls.gov/oes/current/oes472061.htm (last modified Mar. 30, 2016). Assuming Plaintiff can return to his work as a construction laborer but not as a welder because of his vision problems, he will earn $3.00 less an hour or $6,240.00 less per year as a construction laborer. If Plaintiff is released from prison next year, he will have twenty more years to work until he reaches retirement age. Retirement & Survivors Benefits: Life Expectancy Calculator, Social Security, https://www.ssa.gov/cgi-bin/longevity.cgi, last visited Mar. 7, 2017. Given these figures, Plaintiff faces losing $124,800.00 in income he could have made over the course of a twenty-year period ($6,240.00 per year multiplied by twenty years) as a result of his vision problems.

---

[6] The Court notes Plaintiff's testimony that he was making $21.50 per hour as a welder ten (10) years ago. However, Plaintiff failed to submit any evidence supporting this hourly rate.

Further, Plaintiff's life expectancy currently is 82 years of age. Id. Again, assuming Plaintiff is released from prison in 2018, he will be financially responsible for forty (40) years of future medical expenses due to his vision problems. Counsel presented evidence that Plaintiff must wear eyeglasses with bifocal lenses. At a conservative estimate, these lenses cost $200.00, and Plaintiff will have that cost, as well as any correlating eye examination (at a conservative cost of $100.00 per examination), every year for forty (40) years' time. (See Doc. 41, Pl.'s Exh. 3.) Using these figures, Plaintiff's future medical expenses for eye care will reach $12,000.00 ($300.00 per year multiplied by forty (40) years).

Additionally, assuming Plaintiff will continue to need mental health care for the first ten years after his release from prison, which would include the costs of his medications and monthly visits to a mental health counselor, Plaintiff will have estimated additional future medical expenses regarding his mental health care concerns of $13,000.00.[7]

Based on these figures, I **RECOMMEND** the Court award Plaintiff **$25,000.00** for future medical expenses and **$124,800.00** in lost income.

### C. Damages Attributable to the Maliciousness of Defendant's Conduct

Judge Hall has already determined Defendant Kight is liable for violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 33, pp. 6–9.) The well-pleaded facts and evidence before the Court reveals that Defendant Kight acted purposefully and maliciously in assaulting Plaintiff, and there was no other purpose of this attack other than to injure Plaintiff. (Doc. 30-3.) Specifically, the DVD of the assault reveals that

---

[7] This figure is based on monthly visits to a mental health counselor at the rate of $100.00 per hour and Plaintiff having to take two medications, as he testified, at the cost of $4.00 a month for each generic prescription and rounding up to the nearest thousand. In addition, the Court's calculations do not take into consideration whether Plaintiff may need more extensive medical or mental health treatment in the future, as Plaintiff did not present any evidence to that end.

Plaintiff was not physically resisting Fugitt or Defendant Kight once they began escorting Plaintiff. Fugitt and Defendant Kight exchanged a knowing look with each other, and each former correctional officer swept one of Plaintiff's legs from under him and used their hands to push Plaintiff to the concrete floor with such force that Plaintiff was lying face-down and motionless for several moments.[8] (Id. at 2:13–5:00.) Once Fugitt and Defendant Kight picked Plaintiff off of the concrete floor, the footage reveals that Plaintiff was lying in a pool of his own blood and was wobbling to stand. (Id. at 5:00.) Moreover, Defendant Kight attempted to conceal his actions by lying about the events leading up to Plaintiff's assault until he was confronted with indisputable proof of his intentional actions. (Doc. 30-5; Doc. 41, Pl.'s Exh. 1, p. 22.) When faced with the DVD footage, Defendant Kight attempted to minimize his actions by telling the investigator that, while he did not intend to injure Plaintiff, he believed putting Plaintiff on the ground was justified. (Doc. 30-5, 6:30.) Defendant Kight's actions served no legitimate, penological purpose and were done with malicious intent. Accordingly, Plaintiff should be given an award of punitive damages based on Defendant Kight's actions.

"Punitive damages are generally available for willful or intentional violations of a common law or statutory duty, and their purpose is to punish and deter the wrongdoer rather than to compensate the aggrieved party." Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000). "Punitive damages are relief other than compensatory monetary damages. Therefore, punitive damages are prospective relief." Johnson v. Breeden, 280 F.3d 1308, 1325 (11th Cir. 2002). Thus, punitive damages are limited by 18 U.S.C. § 3626(a)(1)(A). Id. Title 3626 provides, in relevant part, "Prospective relief in any civil action with respect to prison

---

[8] The look exchanged between Fugitt and Defendant Kight was so brief, it appears they had communicated with each other prior to Plaintiff's escort that they would use some measure of force against Plaintiff. In addition, the use of force was so swift, Plaintiff would have been completely airborne but for Fugitt and Defendant Kight having their hands on Plaintiff.

conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff . . . . The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Given the record before the Court, I **RECOMMEND** the Court award Plaintiff punitive damages in the amount of **$25,000.00**. This amount corresponds with not only the request made by Plaintiff but also the evidence before to the Court. There is no evidence Defendant Kight works in the correctional setting any longer. In fact, Defendant Kight was terminated from his employment with the Georgia Department of Corrections on May 24, 2012, and the warden at Rogers State Prison requested that a "no rehire recommendation" be placed in his file. (Doc. 41, Pl.'s Exh. 1, p. 92.) Thus, it appears Defendant Kight is of limited financial means. Additionally, Plaintiff testified at the hearing that he never observed Defendant Kight assault any other inmates, and counsel stated that there was no evidence that Kight used excessive force against inmates on any other occasion. Defendant Kight should undoubtedly have punitive damages assessed against him, but, particularly given that he is no longer in a position to assault those under his charge, the Court finds $25,000.00 to be a sufficient deterrent to prevent Defendant Kight from acting in the same or similar manner in the future as he did against Plaintiff.

**II.     Attorney's Fees**

"In any action or proceeding to enforce" 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee[.]" 42 U.S.C. § 1988(b). "In any action brought by a prisoner who is confined to any jail, prison, or

other correctional facility, in which attorney's fees are authorized under section 1988", fees will be awarded if "the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title", and "the amount of the fee is proportionately related to the court ordered relief for the violation[.]"  42 U.S.C. § 1997e(d)(1).  "Whenever a monetary judgment is awarded", "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant."  42 U.S.C. § 1997e(d)(2).  An attorney's hourly rate can be "no greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."[9]  42 U.S.C. § 1997e(d)(3).

Ms. Piland stated during the hearing that she had spent approximately twenty-eight (28) hours on this case over the course of two and a half weeks' time, plus time she spent in Court during the hearing.  Ms. Piland noted her out-of-court time was expended in reviewing the pleadings in this case, getting "up to speed", and preparing for the Court's February 21, 2017, hearing.  However, Ms. Piland also stated she attempted to contact Mr. Albert Wan, Plaintiff's former counsel, in an attempt to ascertain his attorney's fees in this case.  Mr. Wan was Plaintiff's counsel at the time the Complaint, Amended Complaint, and Motion for Default were filed.  Nevertheless, Ms. Piland was unsuccessful in having Mr. Wan submit an affidavit or other documentation to indicate the number of hours he spent litigating this case.  Thus, the Court will only consider Ms. Piland's time in calculating an attorney's fee award.

---

[9] An attorney appointed under Section 3006A was originally to be paid no more than $60.00 per hour for time spent in court and $40.00 per hour for time spent out of court.  18 U.S.C.§ 3006A(d)(1).  However, the Judicial Conference has been authorized to raise these rates.  Id.  The Judicial Conference has done so and allows for an hourly rate of $129.00 per hour in non-capital cases and makes no distinction between in-court and out-of-court time.  http://jnet.ao.dcn/court-services/cja-panel-attorneys-and-defenders/cja-rates-case-compensation-maximums/current-criminal-justice-act-cja-rates-and-case-compensation-maximums, last visited Mar. 7, 2017.

Again, Ms. Piland stated she expended twenty-eight (28) hours in out of court time on this case. This appears to be a reasonable amount of time to spend on this case to have done the bare minimum required by the Court. In addition, the evidentiary hearing lasted approximately one and one-quarter hours. (Doc. 40.) Accordingly, I recommend the Court award $5,659.88 in attorney's fees for time spent by Ms. Piland.[10]

The Court also finds Mr. Wan's 32 hours' time to be reasonable. Mr. Wan drafted the Complaint, Amended Complaint, and pleadings regarding the default of Defendant Kight. However, the Court assesses the hourly rate of $193.50, which is 150 percent of the prevailing rate authorized by Sections 3006A and 1997e(d), rather than the $300.00 hourly rate requested by Mr. Wan. Thus, I recommend the Court award $6,192.00 in attorney's fees for time spent by Mr. Wan.

The Court should award total attorney's fees in the amount of **$11,851.88**. Additionally, pursuant to 42 U.S.C. § 1997e(d)(2), in the event Plaintiff recovers his award of compensatory damages, **$2,000.00** of that recovery shall be applied to satisfy the amount of attorney's fees awarded against Defendant.

**III.  Costs**

Ms. Piland submitted a statement of costs associated with prosecuting this cause of action. This invoice indicates Ms. Piland expended $1,318.86 in expenses from May 22, 2014, through September 28, 2015. In addition, counsel expended $26.12 in Federal Express charges. (Doc. 41, Pl.'s Exh. 2.) Ms. Piland also stated during the hearing that she is seeking $301.28 in mileage fees, $39.35 in postage, and $389.10 for copies. These expenditures appear reasonable

---

[10] This figure was calculated by multiplying 29.25 hours by $193.50 per hour.

in light of the record before the Court, and there is a sufficient basis for counsel's expenditures. Thus, I **RECOMMED** the Court award Ms. Piland costs in the amount of **$2,074.71**.

In addition, Mr. Wan seeks reimbursement for the filing fee, materials needed for his *pro hac vice* admission, and a UPS mailing to the Court. (Doc. 42-2.) Mr. Wan's fees are reasonable in light of the record before the Court and were necessary for the commencement and prosecution of this case. Accordingly, I **RECOMMEND** the Court award Mr. Wan costs in the amount of **$641.00**.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Plaintiff's Motion for Default and **AWARD** total damages, fees, and costs in the amount of **$289,367.59** against Defendant Kight and in favor of Plaintiff. This award should be apportioned as follows: **$100,000.00** in compensatory damages for physical pain and suffering and mental and emotional distress; **$25,000.00** for future medical expenses; **$124,800.00** in lost income; **$25,000.00** in punitive damages; **$11,851.88** in attorney's fees; and costs in the amount of **$2,715.71**. Additionally, pursuant to 42 U.S.C. § 1997e(d)(2), in the event Plaintiff recovers his award of compensatory damages, **$2,000.00** of that recover shall be applied to satisfy the amount of attorney's fees awarded against this Defendant.

The Court **ORDERS** any party seeking to object to this Report and Recommendation is to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of March, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA